UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

DSK GROUP, INC.,

      Plaintiff,

v.                                    Case No: 8:15-cv-1987-T-36JSS

ZURICH AMERICAN INSURANCE
COMPANY,

      Defendant.

_____/

## **ORDER**

This matter comes before the Court upon the Defendant's Motion to Dismiss Counts I, II and III (Doc. 12), Plaintiff's response thereto (Doc. 15), and Defendant's reply (Doc. 22).  The Court, having considered the motion and being fully advised in the premises, will deny Defendant's Motion to Dismiss as to Counts I and II.  However, the Court will grant Defendant's Motion to Dismiss as to Count III.

## I.  **Plaintiff's Factual Allegations[1]**

On or about August 22, 2008, one of Plaintiff's employees (hereinafter "Employee" or "Claimant"), was reportedly injured on the job by a fall. Doc. 2 ¶ 9. Pursuant to the insurance policy purchased by Plaintiff DSK Group, Inc. ("DSK"), Defendant Zurich American Insurance Company ("Zurich") was entirely responsible for investigating, processing, and responding to all claims for Worker's Compensation benefits brought by Plaintiff's employees. *Id.* ¶ 10. Said policy

---

[1] The following statement of facts is derived from Plaintiff's Complaint (Doc. 2), the allegations of which the Court must accept as true in ruling on the instant Motion to Dismiss. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983).

included a "Loss Limitation," which was defined as "the maximum amount You are obligated to reimburse Us for each occurrence, accident or claim under the Policy(ies)." *Id.* ¶ 11. Plaintiff's Loss Limitation, similar to a deductible, under this policy was $250,000.00 for each occurrence, accident, or claim. *Id.* Thus, if Claimant's injury was deemed compensable, Plaintiff would be required to reimburse Zurich for up to $250,000.00 under the claim. *Id.*

While Claimant was undergoing treatment for the injury (which was acknowledged by Claimant's physicians as an exacerbation of a preexisting back injury) independent medical examinations determined that 90% of Claimant's injury was the result of the prior unrelated injury, not the workplace accident. *Id.* ¶ 12. Thus, at most, Plaintiff's responsibility under a workers' compensation claim was for only 10% of the treatment costs. *Id.* ¶ 13. Despite this fact, Zurich deemed the injury compensable, and the cost was then passed on to the Plaintiff through the Loss Limitation. *Id.*

As a result of this determination, Zurich authorized and paid for spinal fusion surgery at the exact location of Claimant's prior surgery. *Id.* ¶ 14. During the surgery, Claimant sustained a serious additional injury, which became the subject of a medical malpractice claim and required additional corrective procedures, for which Plaintiff was also made financially responsible. *Id.* ¶ 15. The $250,000.00 Loss Limitation was completely exhausted by the aforementioned claim. *Id.* ¶ 16.

After Claimant's medical malpractice case was settled, Plaintiff was forced to become involved in a subrogation effort to recover the portion of the settlement to which it was entitled. *Id.* ¶ 17. Pursuant to this subrogation effort, Zurich placed a third party lien against the medical malpractice claim. *Id.* From the onset of the subrogation proceedings, Plaintiff was told by Zurich that the full value of the injured worker's malpractice claim was $1,500,000 at a minimum based

2

on Zurich's internal review, and that Claimant had offered $2,376.00 to settle the lien. *Id.* ¶ 18. Unbeknownst to Plaintiff, and without Plaintiff's authorization, Zurich's agent, the subrogation adjuster, had offered to settle the lien for $11,857.09. *Id.*

It was not until late June 2013, after Plaintiff was forced to involve its own attorney in the subrogation proceedings that Plaintiff discovered that the full value of the claim was much less because Claimant had no permanent injury from the malpractice, which in turn made Plaintiff's third-party lien considerably more valuable. *Id.* ¶ 19. Claimant's medical-malpractice attorney suggested during the subrogation proceedings in 2013 that the malpractice case was settled for less than the policy limits of $250,000 because the evidence showed that Claimant was returned to his pre-surgical status, and thus there was no permanent injury caused by the malpractice. *Id.* ¶ 20. Yet for months during the pendency of the subrogation action, Zurich asserted to Plaintiff that the full value of the malpractice claim was between $1,500,000 and $3,000,000. *Id.* Moreover, Zurich and its attorneys failed to fully and effectively defend Plaintiff in the subrogation action. For example, Zurich's attorneys did not serve discovery requests upon Claimant until a week prior to trial. *Id.* ¶ 21. Upon investigation into Zurich's handling of the subrogation claim in July 2013, Plaintiff discovered that the Claimant's injury was only 10% attributable to his work place injury. *Id.*

In addition to the payout for this claim, Plaintiff paid Zurich $8,069 for bill review; $7,313 for case management; $15,834 for cost containment; $7,460 for medical case management; $1,912.00 for physician advisers; $585.00 for utilization review and $8,247 for legal expense. *Id.* ¶ 22. Despite all of these services, an unrelated claim was accepted as compensable, Plaintiff was forced to pay a doctor to correct his own admitted mistake, and Plaintiff's attempt to mitigate its losses through subrogation efforts was continuously frustrated and compromised by Zurich. *Id.*

As a result, Zurich's actions had an impact on Plaintiff's business. Plaintiff was forced to increase its collateral by over $165,000 and increase its loss fund by almost $30,000. *Id.* ¶ 23. Plaintiff's experience modification rating, which affects the premiums it is required to pay for workers' compensation insurance, increased, and resulted in an increase in the premiums and collateral Plaintiff was required to pay for worker's compensation insurance. *Id.*

In July 2013, Plaintiff made an errors and omissions claim in writing to Defendant requesting to be reimbursed its $250,000.00 Loss Limitation. *Id.* ¶ 24. Defendant responded on or about September 25, 2013 with a letter which expounded at length about the difficulties in proving that the preexisting injury was the primary cause of Claimant's condition, despite acknowledging the fact that there were independent medical exam findings that the prior injury was 90% responsible for the condition. *Id.* ¶ 25. Zurich, as the insurer, was responsible for conducting the investigation and defending its insured against non-compensable claims. The process of investigating, valuing, and if necessary, defending groundless claims was Defendant's job, for which it was being paid hundreds of thousands of dollars in premiums and deductibles by Plaintiff. *Id.* Plaintiff responded to the September 25, 2013 correspondence with another letter on or about October l, 2013 and an e-mail on or about December 23, 2013. *Id.* ¶ 26. Zurich did not respond to the October l, 2013 letter or the December 23, 2013 email until April 25, 2014, and again declined payment of Plaintiff's errors and omissions claim. *Id.* ¶ 27.

## II.    Standard of Review

To survive a motion to dismiss, a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal,* 556 U.S. 662, 677-78 (2009) (quoting Fed. R. Civ. P. 8(a)(2)).  Labels, conclusions and formulaic recitations of the elements of a cause of action are not sufficient.  *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555

(2007)).  Furthermore, mere naked assertions are not sufficient.  *Id.*  A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.* (quoting *Twombly*, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted).  When ruling on a motion to dismiss the Court must accept as true the factual allegations in the complaint. *Linder v. Portocarrero*, 963 F.2d 332, 334 (11th Cir. 1992); *Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp. S.A.*, 711 F. 2d 989, 994 (11th Cir. 1983). The court, however, is not bound to accept as true a legal conclusion labeled as a "factual allegation" in the complaint.  *Id.* Therefore, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.*  (citation omitted).

## III.    Discussion

In its Complaint, Plaintiff asserts claims for statutory bad faith, breach of fiduciary duty, professional negligence, and breach of contract. Defendant seeks to dismiss all claims except Count IV, for breach of contract.

### A.    Count I: Statutory Bad Faith

Defendant argues that the Bad Faith Claim should be dismissed because, under Florida law, a bad faith insurance claim is premature until there has been a determination of coverage under the policy at issue. *See, e.g., Vest v. Travelers Ins. Co.*, 753 So.2d 1270, 1276 (Fla. 2000); *Blanchard v. State Farm Mut. Auto. Ins. Co.,* 575 So.2d 1289, 1291 (Fla. 1991); *GEICO v. Harvey*, 109 So. 3d 236, 237 (Fla. 4th DCA 2013); *Rock v. State Farm Mut. Auto. Ins. Co.,* No. 8:12-CV-2890-T-30AEP, 2013 WL 230248, at *2 (M.D. Fla. Jan. 22, 2013) ("Indeed, a bad faith claim does not even accrue until the conclusion of the underlying UM case."); *State Farm Florida Ins. Co. v.*

*Seville Place Condo. Ass'n*, 74 So. 3d 105, 108 (Fla. 3d DCA 2011); *Liberty Mut. Ins. Co. v. Farm, Inc.*, 754 So.2d 865, 866 (Fla. 3d DCA 2000); *General Star Indem. Co. v. Anheuser-Busch Cos., Inc.,* 741 So.2d 1259, 1261 (Fla. 5th DCA 1999) ("[f]or both first party and third party bad faith claims against insurers, recent case law has clarified the point that coverage and liability issues must be determined before a bad faith cause can be prosecuted."). Plaintiff contends that the question of coverage has already been resolved and argues that it has suffered actual damages by having to pay out on the claim.

This case is unique in that the insured, DSK, asserts there is no coverage under the worker's compensation policy, as opposed to the typical case which seeks a finding that there is coverage under the policy.  The parties dispute whether the issue of coverage has already been resolved. The Court is unpersuaded that the issue of coverage has already been resolved, as there has been no judicial determination as to whether there is coverage.  However, abatement, rather than dismissal without prejudice, is more appropriate.  Either dismissal without prejudice or abatement would resolve the issue of prematurity, and it is well-established that either disposition is permissible under Florida law. *See Safeco Ins. Co. of Ill. v. Rader*, 132 So. 3d 941, 948 (Fla. 1st DCA 2014) (holding that if an insured files a premature claim for bad faith, it should "be either dismissed without prejudice or abated"); *Safeco Ins. Co. of Ill. v. Beare*, 152 So. 3d 614, 617 (Fla. 4th DCA 2014) (same); *State Farm Mut. Auto. Ins. Co. v. O'Hearn*, 975 So. 2d 633, 635-36 (Fla. 2d DCA 2008) (same). Indeed, many courts—both state and federal—have abated rather than dismissed premature bad faith claims. *See, e.g.*, *Gianassi v. State Farm Mut. Auto. Ins. Co.*, 60 F. Supp. 3d 1267, 1271 (M.D. Fla. 2014); *State Farm Mut. Auto. Ins. Co. v. Tranchese*, 49 So. 3d 809, 810 (Fla. 4th DCA 2010); *Esposito v. 21st Cent. Centennial Ins. Co.*, Case No. 14-cv-1881, 2015 WL 1612012, at *2 (M.D. Fla. Apr. 9, 2015); *Park Place Condo. Ass'n of Tampa, Inc. v.*

*State Farm Fire & Cas. Co.,* Case No. 11–cv–884, 2011 WL 2470105, at *1 n.1 (M.D. Fla. May 13, 2011); *Demott v. Liberty Mut. Fire Ins. Co.*, Case No. 08-cv-857, 2008 WL 2359923, at *1 (M.D. Fla. June 5, 2008).

Defendant cites to various decision in this district finding dismissal with prejudice is appropriate in this instance but concedes that ultimately this Court has discretion to either abate or dismiss without prejudice.  Here, the Court finds that abatement is more appropriate because it would conserve judicial resources and reduce the potential for inconsistent rulings. *See Gianassi*, 60 F. Supp. 3d at 1271 (noting that "abatement offers . . . the possibility of increased judicial efficiency for those bad faith claims that do become ripe").  Therefore, Count I is hereby abated pending resolution of Count IV.

### B. Count II: Breach of Fiduciary Duty

Defendant argues that the breach of fiduciary duty claim is duplicative of the bad faith claim already asserted. *See* Doc. 35 at p. 4 (citing *Tanaka v. GEICO General Ins. Co.,* Case No. 6:11–cv–2002-ORL–31KRS. 2013 WL 3323242, 2 (M.D. Fla. July 1, 2013)). However, Plaintiff is permitted to plead a claim for breach of fiduciary duty as an alternative claim for relief. *See, e.g., Brown v. Toscano,* 254 F.R.D. 690, 699 (S.D. Fla. 2008) (citing Fed. R. Civ. P. 8(d)(2)). Therefore, Count II will not be dismissed.

### C. Count III: Professional Negligence

Zurich argues that Florida law does not allow professional negligence actions against insurers for claims handling activities and that the facts underlying Count III can only be used to support a bad faith claim. Plaintiff responds that the professional negligence claim is not duplicative of the bad faith claim because the standards for negligence and bad faith are different and cites to *Merrett v. Liberty Mut. Ins. Co.,* No. 3:10-CV-1195-J-12MCR, 2012 WL 37231, at *5

(M.D. Fla. Jan. 6, 2012) and *Government Employees Insurance Company v. Prushansky*, 2014 WL 47734 (S.D.Fla. Jan. 7, 2014).   However, as Zurich correctly points out, both cases are inapplicable.   On the one hand, *Merrett* involved a professional claims management company not an insurance company and *Government Employees Insurance Company*, involved a claim for bad faith.   Moreover, bad faith claims alleging the failure to handle the insured's claim in good faith sound in contract under Florida law. *Venn v. St. Paul Fire and Marine Ins. Co*., 99 F.3d 1058, 1065 (11th Cir. 1996) (citing *Government Employees Ins. Co. v. Grounds*, 332 So. 2d 13, 14 (Fla. 1976)(per curiam)(duty of good faith is a contractual duty)).   *See also Swamy v. Caduceus Self Ins. Fund, Inc*., 648 So.2d 758, 760 (Fla. 1st DCA 1994) (noting that "Florida is in the minority in this respect, as most states treat this as a tort claim or as a combination of tort and contract").   Moreover, "[a]n insurer's simple negligence does not amount to bad faith."   *Bell v. Geico Gen. Ins. Co.*, 489 Fed. Appx. 428, 431 (11th Cir. 2012).   In addition, DSK's assertion of professional negligence under a Florida Department of Financial Services ethical rule governing insurance adjusters is without merit.   The Court agrees with Zurich's contention that the Rule itself does not create a private cause of action separate and apart from the Bad Faith Statute.   Accordingly, there is no cause of action against an insurer in Florida for professional negligence against the insurance company based on its claim handling conduct.   Therefore, Count III will be dismissed.

DSK has sought an opportunity to amend the Complaint, particularly as to Count III.   The Court will permit such an amendment with the caveat that DSK's amended complaint should not assert claims already found deficient as discussed herein, *i.e.*, there is no cause of action in Florida for a negligent breach of the duty to act in good faith.   Accordingly,

It is hereby **ORDERED** that Defendant's Motion to Dismiss (Doc. 12) is **GRANTED** in part and **DENIED** in part as follows:

1.      Defendant's Motion to Dismiss Count I is **DENIED**.

2.      Count I is hereby **ABATED** pending resolution of Count IV.

3.      Defendant's Motion to Dismiss Count II is **DENIED**.

4.      Defendant's Motion to Dismiss Count III is **GRANTED**.

5.      DSK is granted leave to file an amended complaint within **FOURTEEN (14)**

        **DAYS** from the date of this Order, which corrects the deficiencies noted herein.

**DONE AND ORDERED** in Tampa, Florida on May 26, 2016.

_Charlene Edwards Honeywell_
Charlene Edwards Honeywell
United States District Judge

Copies to:
Counsel of Record and Unrepresented Parties, if any

9